UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JUANITA JAMES, as Administratrix of the Estate of
Sitarah Daniels,

                                 Plaintiff,

-vs-

MONROE COUNTY, MONROE COUNTY
JAIL SUPERINTENDENT RONALD HARLING,
MONROE COUNTY SHERIFF TODD BAXTER,
PRIMECARE MEDICAL OF NEW YORK, INC.,
KARA HAYDANEK CAPELLUPO, R.N., JOHN
DOE COUNTY SHERIFF'S DEPUTIES 1-6,
JOHN DOE HEALTHCARE PROVIDERS 1-5,
MONROE COUNTY SHERIFF'S OFFICE,

                                 Defendants.

DECISION and
ORDER

20-CV-7094 CJS

_____

## INTRODUCTION

This action arises from the tragic death of Sitarah Daniels, who committed suicide while a pretrial detainee at the Monroe County Jail in Rochester, New York.  Now before the Court is Defendants' motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (ECF No.12) and Plaintiff's cross-motion to amend her Complaint (ECF No. 21). For the reasons discussed below, Defendants' Motion for Judgment on the Pleadings (ECF No. 12) is denied as moot and Plaintiff's Motion to Amend (ECF No. 21) is granted in part and denied in part.

## FACTUAL BACKGROUND

For purposes of this Decision and Order, the Court takes the following facts as set forth in the proposed Amended Complaint to be true.  On August 8, 2018, Sitarah Daniels ("Sitarah"), the decedent, was placed in the custody of the Monroe County Jail ("the Jail") as a pretrial

1

criminal detainee.  Sitarah, who had attained the age of thirty-two, had various longstanding diagnoses for mental illnesses, including depression, anxiety, and schizoaffective disorder. Sitarah had previously been detained at the Jail three years earlier, in 2015, and, while there, had attempted suicide by hanging herself with a bedsheet.[1]  Upon arriving at the jail in August 2018, Sitarah was initially placed on suicide watch, which involved constant monitoring. However, after five days, on August 13, 2018, Sitarah was cleared to be removed from suicide watch and placed in a cell by herself in the jail's general population.[2]

At all relevant times, defendant PrimeCare Medical of New York, Inc. ("PrimeCare") provided medical and/or mental health services to all inmates at the Jail, pursuant to a contract between PrimeCare and Monroe County.  Presumably, therefore, the decision to remove Sitarah from suicide watch, and any other decision related to her mental health treatment, was made by an employee of PrimeCare.

According to "one witness," namely, another jail detainee who was interviewed following Sitarah's death, Sitarah displayed increased anxiety and changed behavior in the days leading up to a court appearance on September 4, 2018.  However, there is no indication that such witness, or Sitarah herself, reported this to employees of the Jail or PrimeCare, and Sitarah was not re-evaluated or placed back on suicide watch.

Following Sitarah's court appearance on September 4, 2018, at 2:20 p.m., she was returned to her cell in general population, located on the fourth floor of the jail.  A jail officer, Doe Deputy 1, performed a patrol or "watch tour" of the fourth floor between 2:26 and 2:40 p.m., but failed to complete the patrol and did not pass Sitarah's cell.  Doe Deputy 1's failure to complete

---

[1] It is unclear whether that was the last time she had been at the jail prior to the events in this lawsuit, or whether she had been confined at the jail on subsequent occasions during the intervening three years.

[2] The Complaint alleges that Sitarah was "improperly cleared" from suicide watch, but that is a conclusion which the Court is not required to accept as true.  The Complaint does not allege facts explaining why it would have been improper to remove Sitarah from suicide watch on that occasion.  To the extent Plaintiff is asserting that a detainee who has previously attempted suicide must thereafter always be kept on suicide watch, the assertion is not plausible.

her watch tour triggered an alarm in the Jail's Central Control, where deputies (John Doe Deputies 5 and 6) were stationed, but no corrective action was taken. At approximately 2:33 p.m., Sitarah hanged herself by the neck from the bars of her cell, using a bedsheet. Between 2:40 and 2:50 p.m., Doe Deputy 1 performed another incomplete watch tour of the fourth floor that again failed to pass by Sitarah's cell, and consequently, failed to observe that Sitarah had hanged herself. Additionally, officers in Central Control were again notified of the incomplete patrol but failed to take corrective action. At 2:57 p.m., other officers observed Sitarah hanging in her cell, and, a minute later, cut her free, performed CPR, and transported her to the hospital. However, Sitarah was declared dead from her injuries (hypoxic/anoxic brain injury) the next day at 7:20 p.m.

## PROCEDURAL BACKGROUND

On December 2, 2019, Sitarah's mother, Plaintiff Juanita James ("Plaintiff"), commenced this action by filing a Complaint in New York State Supreme Court, Monroe County. The Complaint named the following defendants: Monroe County, Monroe County Sheriff's Office, Monroe County Sheriff Todd Baxter ("Baxter"), Monroe County Jail Superintendent Ronald Harling ("Harling"), John Doe Monroe County Sheriff's Deputies 1–6, PrimeCare, Kara Haydanek Capellupo, R.N. ("Capellupo"), and John Doe Healthcare Providers 1–5. Capellupo and the John Doe Healthcare Providers were employees of PrimeCare.

The Complaint purported to assert three causes of action: 1) a claim against all defendants, without differentiation, involving conduct at the Jail between August 8, 2012 and September 4, 2018, that was allegedly "negligent, careless and/or reckless" and caused conscious pain and suffering to Sitarah and resulted in her death; 2) a claim against "one or more of the defendants," without differentiation, involving "negligent medical and/or mental health care treatment" at the Jail between August 8, 2012 and September 4, 2018, that resulted

in Sitarah experiencing conscious pain, suffering and death; and 3) a claim against "one or more of the defendants," without differentiation, involving "negligent, careless and/or reckless" conduct at the Jail between August 8, 2012 and September 4, 2018, amounting to a "callous disregard of the rights guaranteed to [Sitarah] by the Constitution of the United States of America," that caused conscious pain and suffering to Sitarah and resulted in her death.

When Plaintiff commenced the action she had not yet complied with the notice requirements for bringing a tort claim against a municipality set forth in New York General Municipal Law § 50-e, and, consequently, her Complaint did not contain the pleading averments required by Municipal Law § 50-i. [3]  However, soon thereafter Plaintiff applied for, and was granted, leave to file a late notice of claim, pursuant to General Municipal Law § 50-e(5), and subsequently complied with the notice of claim requirements.

On December 2, 2020, Defendants removed the action from New York State Supreme Court to this Court, on the basis of federal question jurisdiction, arising from the alleged constitutional violation.

On February 3, 2021, Defendants moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), on five grounds.[4]  First, Defendants contend that the Complaint fails to state any actionable claim.  Although, as will be discussed further below, that does not seem to be

---

[3] "No action or special proceeding shall be prosecuted or maintained against a city, county, town, village, fire district or school district for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city, county, town, village, fire district or school district or of any officer, agent or employee thereof, including volunteer firefighters of any such city, county, town, village, fire district or school district or any volunteer firefighter whose services have been accepted pursuant to the provisions of section two hundred nine-i of this chapter, unless, (a) a notice of claim shall have been made and served upon the city, county, town, village, fire district or school district in compliance with section fifty-e of this article, (b) it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice, or if service of the notice of claim is made by service upon the secretary of state pursuant to section fifty-three of this article, that at least forty days have elapsed since the service of such notice, and that adjustment or payment thereof has been neglected or refused, and (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based; except that wrongful death actions shall be commenced within two years after the happening of the death." N.Y. Gen. Mun. Law § 50-i (McKinney).

[4] ECF No. 12 at p. 2.

their true position, since they admit they are not moving against certain claims.

Second, Defendants maintain that to the extent the Complaint is attempting to assert a constitutional claim for deliberate indifference to a serious medical need, it fails to state a claim against Capellupo, Baxter or Harling, since it does not plausibly allege those defendants were personally involved in such a violation.[5]  On this point, Defendants contend that,

> Plaintiff here has failed to allege personal involvement by Individual Defendants with respect to the allegedly inadequate medical or mental health treatment while Decedent was a pre-trial detainee at Monroe County Jail.  At best, the Complaint contains generic allegations regarding the treatment decisions of unidentified medical staff.
>
> ***
>
> [Moreover,] [e]ven if Plaintiff had correlated specific factual allegations to the Individual Defendants, none of the alleged facts suggests subjective deliberate indifference in connection with mental health treatment.

ECF No. 12-2 at pp. 12–13.

Third, Defendants contend that to the extent the Complaint is attempting to assert a constitutional claim for deliberate indifference to a serious medical need against PrimeCare, Monroe County, or the Monroe County Sheriff's Office, it fails to adequately plead a *Monell* municipal-liability claim.  In that regard, Defendants argue, first, that there can be no *Monell* liability where there is no plausibly-pleaded underlying constitutional violation, and, further, that the Complaint fails to plausibly identify a municipal custom, policy or practice the led to the alleged violation of Sitarah's constitutional rights.

Fourth, Defendants indicate that the Complaint fails to plead a New York State-law medical malpractice claim against Capellupo or PrimeCare, since it does not allege the violation of a standard of care by either of them.  For example, and similar to the "personal involvement"

---

[5] Defendants point out that the Complaint does not allege any unconstitutional conduct by any particular individual defendant, and assert that even the general allegations of wrongdoing (directed against no one in particular) are not indicative of deliberate indifference. ECF No. 12-2 at p. 13.

argument raised in connection with the Section 1983 claim, Defendants assert that the alleged acts of malpractice – "Decedent's removal from constant watch and subsequent conduct around the time of her death – are not specifically attributed to either Nurse Capellupo or Primecare."[6]

Finally, Defendants contend that to the extent the Complaint is attempting to assert any type of state-law claim against Monroe County, the Monroe County Sheriff's Office, Capellupo, Baxter or Harling, it must be dismissed since it fails to plead compliance with New York General Municipal Law §§ 50-e and 50-i.  That is, Defendants acknowledge that Plaintiff may have actually satisfied the General Municipal Law's requirements concerning the timely service of a claim, after being granted leave in state court to file a late notice of claim, but contend that she subsequently failed to amend her Complaint to specifically plead compliance with the statutory requirements.[7]

Defendants conclude by reiterating that they are asking the Court "to dismiss the Complaint in its entirety against [Primecare] and [Capellupo], and against Defendants Monroe County, Monroe County Sheriff's Office, [Baxter], and [Harling]" to the extent they have been sued based upon medical treatment.[8]   Defendants add, however, that they do "not seek dismissal of the [remaining] claims insofar as they are predicated upon [failure to perform] security rounds and other non-medical/mental health allegations in the Complaint." ECF No. 12-2 at p. 5, n. 1.  Defendants' motion does not expressly request relief on behalf of the eleven John Doe defendants.[9]

On March 11, 2021, Plaintiff filed her opposition to Defendants' motion, along with a request to amend the Complaint. (ECF Nos. 20 & 21).   Preliminarily, Plaintiff clarifies that she

---

[6] ECF No. 12-2 at p. 11.
[7] ECF No. 12-2 at p. 15 ("Failure to plead compliance with the General Municipal Law warrants dismissal of the Complaint.").
[8] ECF No. 12-1 at ¶ 17; *see also*, ECF No. 12-1 at ¶ 2 (Restricting Defendants' motion to claims "*with respect to medical treatment* provided to Decedent while she was an inmate at the Monroe County Jail." "(emphasis added).
[9] *See*, ECF No. 12-1 at ¶ 17,  ECF No. 12-2 at pp. 1 & 12, and ECF No. 27 at p. 6 (specifying the defendants upon whose behalf the motion was filed, which does not include the John Doe defendants).

is asserting a Fourteenth Amendment deliberate-indifference-to-a-serious-medical-need claim against Monroe County, the Jail, Baxter, Harling, and John Doe Deputies 1-6, based on their alleged "failure to perform complete watch tours and inmate welfare checks," which, she contends, "deprived [Sitarah] of necessary medical care and treatment, in violation of the 14th Amendment to the U.S. Constitution." ECF No. 20-5 at pp. 1-2.  Plaintiff maintains, though, that she is not asserting any constitutional claim against Capellupo, Primecare, or John Doe Healthcare Providers 1-5," concerning their actual provision of medical care to Sitarah. ECF No. 20-5 at p. 2.  Moreover, Plaintiff clarifies that she is not asserting any Section 1983 claim against Baxter, Harling, Primecare, Monroe County or the Monroe County Sheriff's Office for anything that happened prior to the alleged incomplete watch tours and inmate welfare checks on the day of Sitarah's death.[10]   In other words, the constitutional claims are limited to the alleged incomplete watch tours and inmate welfare checks on the afternoon of September 4, 2018. Plaintiff indicates that her proposed Amended Complaint "does not expand her claims previously pleaded," but is intended to accomplish two things: First, to clarify that she is not asserting a constitutional claim based on any "medical/mental health treatment rendered to [Sitarah] prior to the incomplete watch tours and inmate welfare checks" on the afternoon of Sitarah's suicide; and, second, to include allegations "concerning [her] compliance with the General Municipal Law."

With regard to General Municipal Law § 50-i, Plaintiff maintains that she was unable to comply with that section's pleading requirement when she filed the original Complaint, since she was granted leave to file a late notice of claim just as the statute of limitations was expiring and would have missed the statutory filing deadline if she had waited an additional thirty days before filing the Complaint.[11]  However, Plaintiff has now included allegations regarding her compliance

---

[10] Pl. Mem. of Law at p. 12.
[11] *See, N.Y. Gen. Mun. Law § 50-i*  ("it shall appear by and as an allegation in the complaint or moving papers that

with the General Municipal Law in the Amended Complaint.

Plaintiff also opposes Defendants' motion for judgment on the medical malpractice claims against Primecare and Capellupo, asserting that she is not required to plead specific violations of standards of care to support a medical malpractice claim, and that she has plausibly pleaded the various ways in which Sitarah received negligent and improper care and treatment.[12]

Defendants filed a Reply (ECF No. 27) in which they reiterate, preliminarily, that their Motion for Judgment on the Pleadings pertains only to claims "arising out of medical/mental health treatment."[13]  Next, Defendants assert that Plaintiff's response "either concede[s], or fail[s] to rebut, the arguments in Defendants' original [sic] motion to dismiss," and that Plaintiff's request to amend is procedurally deficient under the Local Rules of Civil Procedure,[14] and should also be denied as futile.  With regard to the alleged futility of the proposed amendment, Defendants assert that Plaintiff has still failed to state any plausible constitutional claim involving medical/mental treatment against any defendant, or any state-law medical malpractice claim against Capellupo or Prime Care.  More specifically, concerning the medical malpractice claim, Defendants contend that the claim is legally deficient, in both the Complaint and Amended Complaint, because it fails to plausibly allege malpractice by any particular defendant. *See*, ECF No. 27 at p. 7 ("Plaintiff's opposition does not address the lack of specific factual allegations against Nurse Capellupo or any other individual healthcare provider.").  Defendants also reiterate that the proposed pleading is deficient since it fails to allege a breach of a standard of medical

---

at least thirty days have elapsed since the service of such notice . . .  and that adjustment or payment thereof has been neglected or refused").

[12] Plaintiff's response, however, does not attempt to explain how Nurse Capellupo is allegedly liable for the alleged medical malpractice.

[13] *See*, ECF No. 27 at p. 4, n. 1 ("Moving defendants take no position on claims that do not implicate medical/mental health treatment.").  However, the parties disagree as to what constitutes medical care in this action.  Defendants do not view the alleged failures with regard to watch tours and welfare checks on the afternoon of Sitarah's death as involving medical care, while Plaintiff maintains that such failures amounted to deliberate indifference to Sitarah's serious medical needs.

[14] Plaintiff did not file a "redline" version of the proposed Amended Complaint as required by the Local Rules.

care.  Finally, Defendants assert that Plaintiff has not offered a reasonable excuse for her delay in amending the Complaint to plead compliance with General Municipal Law § 50-i.

Following the close of briefing, the parties informed the Court that they stipulate to the dismissal of the Monroe County Sheriff's Office from this action, since it is not a legal entity separate from Monroe County.  Accordingly, the Court will dismiss the action as against the Monroe County Sheriff's Office.

The Court has carefully considered the parties' submissions.

ANALYSIS

Standards Applicable to Motions Under Rules 12(c) and 12(b)(6)

Defendants moved against the original Complaint for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  When deciding such a motion, the Court applies the same standard applicable to motions to dismiss under Rule 12(b)(6). *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999) ("In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6)."), *cert. den*. 531 U.S. 1052, 121 S.Ct. 657 (2000).  The 12(b)(6) standard is clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted); *see also*, id. at 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (citations and internal quotation marks omitted.)

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester,* No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal*'s pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal* ); *see also, In re Myovant Scis. Ltd. Section 16(b) Litig.*, 513 F. Supp. 3d 365, 373 (S.D.N.Y. 2021) ("The plaintiffs claim that discovery of the relevant disclosure schedule may establish the portion of the purchase price allocated to Myovant shares. . . . But "it is only by taking care to require allegations that reach the level suggesting [a plausible claim] that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence." *Twombly*, 550 U.S. at 559, 127 S.Ct. 1955. Because their unsupported speculation does not amount to a reasonable foundation, the plaintiffs cannot avoid dismissal by claiming that discovery will reveal a basis for their claim.").

Additionally, in cases such as this that involve multiple defendants, a plausible claim is not stated where a complaint merely lumps defendants together; rather, the complaint must give each defendant fair notice of the claims being asserted against him. *See, Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("Although Fed.R.Civ.P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.  By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, Atuahene's complaint failed to satisfy this minimum standard[.]") (emphasis added; citations and internal quotation marks omitted); *see also, Ochre LLC v. Rockwell Architecture Plan. & Design, P.C.*, No. 12 CIV. 2837 KBF, 2012 WL 6082387,

at *6 (S.D.N.Y. Dec. 3, 2012) ("Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants.") (citations omitted), *aff'd*, 530 F. App'x 19 (2d Cir. 2013).[15]

Moreover, where, as in this case, the Plaintiff is suing "John Doe" defendants, the pleading must nevertheless contain plausible allegations of wrongdoing by such defendants, even if their actual names are presently unknown. *See, e.g., Antonetti v. City of New York*, No. 20CV5109BMCJRC, 2022 WL 1105172, at *3 (E.D.N.Y. Apr. 13, 2022) ("In addition to the two John Doe detectives who arrested plaintiff on September 7, 2019, Plaintiff also names "John Does 103rd Precinct." However, plaintiff does not connect his allegations of false arrest or excessive force to any other employee of the precinct. In fact, there is not a single allegation against any employee of the 103rd Precinct other than the arresting detectives. The absence of allegations against them and lack of personal involvement is fatal to his claims against the 103rd Precinct John Does. Thus, the Section 1983 claims asserted against them are not plausible and are dismissed for failure to state a claim on which relief may be granted."); *Azaryev v. City of New York*, No. 21-CV-3856 (WFK)(LB), 2021 WL 3861722, at *4 (E.D.N.Y. Aug. 27, 2021) ("Plaintiff also names 'Does 1-2.' However, Plaintiff does not connect any factual allegations to any unidentified individual defendant. Although he mentions that Officer McMahon issued the parking ticket and that other officers were called as back up when Plaintiff 'inquired' about the parking ticket, ECF No. 1 at 3, there are no factual allegations as to any individual other than Defendant Sturnam. The absence of allegations against them and lack of personal involvement is fatal to his claims against the John Does."); *LaPietra v. City of Albany Police Dep't*, No. 919CV1527TJMTWD, 2021 WL 1345520, at *5 (N.D.N.Y. Apr. 12, 2021) ("Although Plaintiffs

---

[15] However, context matters. For example, in situations involving an alleged assault by a group of police officers or corrections officers, courts do not insist that the complaint set forth in detail the actions of each officer where it would be unreasonable to expect the plaintiff to be able to do so. *See, Bryant v. Monroe Cnty.*, No. 19-CV-6474 CJS, 2022 WL 119184, at *10 (W.D.N.Y. Jan. 12, 2022) (collecting cases).

contend that Peterson, John Doe #6, John Doe #7, and John Doe #9 were 'present at the residence' on December 14, 2016, the Amended Complaint lacks any factual allegations that plausibly show that Peterson, John Doe #6, John Doe #7, and John Doe #9 were involved with the violation of Plaintiffs' constitutional rights in connection with the alleged illegal search and seizure."), *report and recommendation adopted sub nom. LaPietra v. Mika*, No. 919CV1527TJMTWD, 2021 WL 1940292 (N.D.N.Y. May 14, 2021).

Furthermore, to state a plausible claim where, as here, the pleading contains allegations made almost exclusively "upon information and belief," the pleading must include the facts upon which the beliefs are founded. *See, Tolbert v. Dusza*, No. 19-CV-1691(JLS)(JJM), 2022 WL 3334193, at *2 (W.D.N.Y. Apr. 14, 2022) ("Plaintiff's allegations, made 'upon information and belief,' that CO John Doe defendants ##2–20 'assisted' or 'helped' CO John Doe defendant #1 to spray an unknown chemical into his cell are wholly conclusory and fail to outline the involvement of the John Doe defendants in any meaningful way. '[W]hile a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.' *Schorr v. Dopico*, 205 F. Supp. 3d 359, 363 (S.D.N.Y. 2016), aff'd, 686 F. App'x 34 (2d Cir. 2017)."), *report and recommendation adopted sub nom. Tolbert v. Sullivan*, No. 19CV1691JLSJJM, 2022 WL 2447963 (W.D.N.Y. July 6, 2022).").

Of course, a plaintiff may plead facts upon information and belief where the actual facts are peculiarly within the possession and control of the defendants, a principle that would seem to have particular application where, as here, an action is brought for wrongful death on behalf of one who dies in the custody of a jail or correctional facility, to whose records the plaintiff would likely not have access prior to discovery. *See, Sanchez v. Cnty. of Los Angeles*, No.

CV201146DSFPVCX, 2020 WL 9074714, at *6 (C.D. Cal. Apr. 28, 2020) ("Plaintiff also identifies a series of 'obvious' failures by municipal employees leading up to Decedent's death [inside the Los Angeles County Jail]—failing to isolate Decedent from hostile inmates, turning a blind eye to drug and contraband use by inmates, allowing gang members to move freely between cells, failing to monitor inmates, etc.  Taken together, these allegations suffice to support an inference that Defendants' training program was constitutionally deficient. While it is true that Plaintiff has not specifically named any particular incident that supports her allegations" of inadequate training, that is a question for a later stage in litigation.  Indeed, it is hard for this Court to imagine how such information might be available to a plaintiff without the benefit of discovery.") (citations and internal quotation marks omitted).

Nevertheless, even where facts are peculiarly within the possession and control of the defendant, the plaintiff must allege some factual basis for the allegations made upon information and belief. *See, Ray v. Ray*, 799 F. App'x 29, 31 n. 2 (2d Cir. 2020) ("Ames argues throughout his appellate briefing that where necessary facts 'are peculiarly within the possession and control of the defendant,' he is entitled to allege facts upon information and belief.  But this does not give him carte blanche to make baseless assumptions about otherwise permissible conduct.") (citations and internal quotation marks omitted); *see also, Yamashita v. Scholastic Inc.*, 936 F.3d 98, 107 (2d Cir. 2019) ("[U]ltimately, we cannot accept Yamashita's argument that we should casually deem his entirely generic allegations of breach, pleaded 'upon information and belief,' sufficient simply because the facts regarding Scholastic's actual use of the licensed material are "peculiarly within [Scholastic's] possession and control." He must marshal more than unsubstantiated suspicions to gain entitlement to broad-ranging discovery of his agent's licensee."); *Citizens United v. Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby

14

render it non-conclusory. Those magic words will only make otherwise unsupported claims plausible when the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.") (citation and internal quotation marks omitted);

<u>Standards Applicable to Cross-Motions to Amend Under Rule 15</u>

Plaintiff responded to Defendants' motion by moving to amend the Complaint.  The lenient standard for such an application is also well settled:

> Pursuant to Fed.R.Civ.P. 15, a court should "freely" give leave to amend, "when justice so requires." However, a court may deny leave to amend for any number of "good reason[s], including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (citation omitted). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Martin v. Dickson*, No. 03-7917, 100 Fed.Appx. 14, 16, 2004 WL 1205185 at *2 (2d Cir. Jun. 2, 2004) (unpublished, citation omitted).

*Dapson v. City of Rochester, New York*, No. 17-CV-6704 CJS, 2019 WL 591692, at *7 (W.D.N.Y. Feb. 12, 2019).  Defendants maintain that Plaintiff's proposed amendment would be futile, and that the motion to amend should therefore be denied.

<u>The Court Deems Defendant's Motion for Judgment on the Original Complaint</u>
<u>Moot and Will Consider Whether the Proposed Amended Complaint is Futile</u>

Where, as in this case, a court has before it both a motion for judgment on the pleadings and a cross-motion to amend, the motion to amend does not necessarily moot the motion for judgment; rather, the Court "has a variety of ways in which it may deal with the pending motion [for judgment on the pleadings,] from denying the motion as moot to considering the merits of the motion in light of the amended complaint." *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 80 (D. Conn. 1994); *see also, Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303–04 (2d Cir. 2020) ("This is a sound approach that promotes judicial economy by obviating the need for multiple rounds of briefing addressing complaints that are legally insufficient. We now adopt this

rule and hold that when a plaintiff properly amends her complaint after a defendant has filed a motion to dismiss that is still pending, the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint.").

Here, the Court will disregard the original Complaint and evaluate the sufficiency of the proposed Amended Complaint under Rule 12(b)(6) in light of all of Defendants' legal arguments.[16] *See Seals v. Marianetti-DesRosiers*, No. 521CV988BKSTWD, 2022 WL 3153942, at *2 (N.D.N.Y. Aug. 8, 2022) ("Since Defendants have had a full opportunity to respond to the proposed amendments and the primary claims remain the same, the Court considers the merits of the motion to dismiss in light of the Proposed Second Amended Complaint. If the claims in the Proposed Second Amended Complaint cannot survive the motion to dismiss, then Plaintiff's cross-motion to amend will be denied as futile.").

In that regard, the Court construes the Amended Complaint as asserting the following claims: 1) a Section 1983 Fourteenth Amendment deliberate indifference claim against Monroe County, Baxter, Harling, and John Doe Deputies 1-6 (First Cause of Action); 2) a state-law negligence claim against Monroe County, Baxter, Harling, and John Doe Deputies 1–6 (First Cause of Action); and 3) a state-law medical malpractice claim against PrimeCare, Capellupo, and John Doe Healthcare Providers 1-5 (Second Cause of Action).[17]   Defendants have moved for judgment on the pleadings as to the first and third categories of claim for the reasons noted, and have not moved for judgment on the pleadings as to the second category, except on the basis of Plaintiff's failure to comply with General Municipal Law § 50-i.  For reasons discussed

---

[16] As Defendants correctly point out, Plaintiff's motion to amend did not comply with the Local Rule of Civil Procedure requiring the movant to provide a redlined copy of the proposed amended pleading.  Consequently, the Court was required to perform the annoying task of comparing the original Complaint and the Amended Complaint line by line, which is what the Local Rule is supposed to avoid.  Nevertheless, the Court will overlook this procedural error.

[17] Plaintiff has been somewhat vague, in both the Complaint and Amended Complaint, in naming particular legal claims.  However, her responsive papers indicate that the Second Cause of Action in the Amended Complaint is for medical malpractice.

below, the Court concludes that the Amended Complaint may proceed, except that it fails to state a constitutional claim against any defendant, and fails to state a medical malpractice claim against Capellupo or John Doe Healthcare Providers 1–5.  The Amended Complaint does at least plausibly allege that Sitarah received negligent mental health care at the jail for which PrimeCare would be vicariously liable, since it employs the entire medical staff. [18]  The result is that the First Cause of Action may proceed against Monroe County, Baxter, Harling, and John Doe Deputies 1–6 solely as to state-law negligence, and the Second Cause of Action may proceed against PrimeCare for medical malpractice.

<u>The Amended Complaint Fails to State a Section 1983 Claim</u>

Plaintiff is alleging a constitutional claim under 42 U.S.C. § 1983, and the legal principles generally applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right.

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir.2004) (citation omitted).  Put simply, to plead a plausible claim under Section 1983, a plaintiff must allege that she was deprived of a constitutional right by a person acting under color of state law. *See, Oparaji v. City of New York*, 152 F.3d 920 (2d Cir. 1998) ("To state a claim under § 1983, a plaintiff must allege that the defendants, acting under color of state law, deprived him of a constitutional right. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).").

"[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.  . . .  [For example, i]n addressing an excessive

---

[18]*See, Nasca v. DelMonte*, 111 A.D.3d 1427, 1429, 975 N.Y.S.2d 317, 319 (2013) ("DelMonte P.C. employed Venne and therefore may be held vicariously liable for his conduct.").

force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force.  The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right." *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S. Ct. 1865, 1870–71, 104 L. Ed. 2d 443 (1989) (citations omitted).

"A defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority.  Rather, the personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (citations and internal quotation marks omitted), as amended (Feb. 24, 2016).  Personal involvement of a supervisory defendant may be shown by evidence that:

> "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (internal citations omitted).

Additionally, to sue a municipal defendant under Section 1983 for a constitutional violation committed by a municipal employee, a plaintiff must allege a basis for "*Monell*" liability:

> To plead a *Monell* claim, a plaintiff must allege [(1)] the existence of a formal policy which is officially endorsed by the municipality, or [(2)] a practice so persistent and widespread that it constitutes a custom or usage of which supervisory authorities must have been aware, or [(3)] that a municipal custom, policy, or usage can be inferred from evidence of deliberate indifference of supervisory officials to such abuses.

*Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x at 13.

"The inference that a policy existed may . . . be drawn from circumstantial proof[.]" *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see also, Staten v. Vill. of Monticello*, No. 14-CV-4766 (KMK), 2016 WL 7235796, at *6 (S.D.N.Y. Dec. 13, 2016)  ("At the motion to dismiss stage, Plaintiffs need not prove these elements, but they are required to plead them sufficiently to make out a plausible claim for relief. To do so, Plaintiffs must allege facts tending to support, at least circumstantially, an inference that a municipal policy or custom exists.") (citation and internal quotation marks omitted).

A private entity such as PrimeCare, that contracts to provide medical services to a municipality, is considered a municipal defendant for purposes of the *Monell* pleading requirements. *See, e.g., Tutora v. Aramark Corr. Servs.*, No. 17-CV-9170 (KMK), 2022 WL 2237567, at *6 (S.D.N.Y. June 22, 2022) ("Although the Supreme Court's interpretation of § 1983 in *Monell* applied to municipal governments and not to private entities acting under color of state law, caselaw has extended the *Monell* doctrine to private § 1983 defendants acting under color of state law.") (collecting cases, internal quotation marks omitted); *see also, Swinton v. Corr. Med. Care, Inc.*, No. 15-CV-00053A(F), 2020 WL 9607024, at *10 (W.D.N.Y. Dec. 22, 2020) ("[T]he *Monell* requirements for liability also apply to municipal contractors like CMC which, as the medical provider at MCJ, performs a function traditionally within the exclusive prerogative of the state.") (citation and internal quotation marks omitted), report and recommendation adopted, No. 15-CV-53-A, 2021 WL 2018846 (W.D.N.Y. May 20, 2021).

Plaintiff characterizes her constitutional claim as a denial of "medical care and treatment," though she asserts that claim only against non-medical personnel.  However, a claim of this nature, involving a pretrial detainee's suicide, is treated as a "failure to protect" claim under the Fourteenth Amendment:

"While in custody, a pretrial detainee has a Fourteenth Amendment substantive due process right to care and protection, including protection from suicide." *Kelsey v. City of New York*, 306 Fed. Appx. 700, 702 (2d Cir. 2009). "A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). This difference exists "because '[p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner–neither cruelly and unusually nor otherwise.'" *Id*. (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007) (internal citations omitted)). "A detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id*. (quoting *City of Revere v. Mass. Gen. Hosp*., 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983)).

***

"'[C]laims involving the risk of suicide have been articulated and expressed as violations of the duty to protect, particularly when asserted against non-medical personnel[.]'" *Philillips v. Mitchell*, No. 19-CV-0383, 2021 U.S. Dist. LEXIS 58834, at *9 (N.D.N.Y. Mar. 29, 2021) (quoting *Allah v. Kemp*, No. 9:08-CV-1008 (NAM/GHL), 2010 U.S. Dist. LEXIS 24781, 2010 WL 1036802, at *4 (N.D.N.Y. Feb. 25, 2010)). To prove a failure-to-protect claim, a plaintiff must show "both that a substantial risk to his safety existed and that" defendant acted with deliberate indifference to that risk. *Id*. To prove deliberate indifference, a plaintiff must either "prove that the defendant acted intentionally to impose the alleged condition or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. This part of deliberate indifference is defined "objectively," rather than from the "subjective" perspective of the defendant. *Id*. "[I]n general ... deliberate indifference [is] lacking where officers take affirmative and reasonable steps to protect detainees from suicide." *Kelsey*, 306 Fed. Appx. at 703.

*Est. of Leombruno by & through Douglas v. Cnty. of Greene*, No. 919CV374TJMCFH, 2022 WL 467622, at *11 (N.D.N.Y. Jan. 25, 2022).

To succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *Farmer v. Brennan*, 511 U.S. 825, 834 (1970). A failure to protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr*., 842 F.2d 27, 30 (2d Cir. 1988).

***

"'Deliberate indifference' describes a mental state more blameworthy than negligence; but a plaintiff is not required to show that the defendant acted for the 'very purpose of causing harm or with knowledge that harm will result.'" *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (quoting *Farmer*, 511 U.S. at 835); *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) ("[N]egligence is not deliberate indifference."). "Deliberate indifference is 'a state of mind that is the equivalent of criminal recklessness.'" *Hernandez*, 341 F.3d at 144 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). "[D]eliberate indifference involves unnecessary and wanton infliction of pain, or other conduct that shocks the conscience." *Hathaway*, 99 F.3d at 553.

In order for Plaintiff to satisfy his burden to show deliberate indifference, he must demonstrate that the charged official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Farmer*, 511 U.S. at 837); *accord Phelps v. Kapnolas*, 308 F.3d 180, 185–86 (2d Cir. 2002). <u>In cases involving attempted suicide, deliberate indifference requires "a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide; and (2) intentionally disregarded that risk."</u> *See Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006).

*Phillips v. Mitchell*, No. 919CV0383TJMTWD, 2021 WL 1175051, at *4 (N.D.N.Y. Mar. 29, 2021) (emphasis added).

Here, Plaintiff has not plausibly pleaded that the non-medical jail personnel, whom she has sued in her Section 1983 claim, either knew that Sitarah was at substantial risk of committing suicide or intentionally disregarded that risk. To begin with, while Sitarah may have been on suicide watch at the start of her term in the jail, there is no factual allegation establishing that the non-medical jail personnel sued here were personally aware of that fact, or of her medical history or her prior suicide attempt three years earlier.

Nor would it be reasonable to infer that they had such information. *Compare, McTerrell v. Koenigsmann*, No. 18-CV-1028-JLS-HKS, 2021 WL 5772484, at *6 (W.D.N.Y. Aug. 18, 2021) ("It is reasonable to infer that Forster and Long were aware of the circumstances of McTerrell's first suicide attempt, as they were specifically called to assist with McTerrell's return from the

Mental Health Unit to his cell in SHU. Moreover, McTerrell exhibited significant worry about entering his cell and disclosed to both Forster and Long that he was hearing voices and that the devil was in his cell—strong signs of continued emotional disturbance. In short, the risk that McTerrell would again attempt suicide if he was forced to return to his cell—clearly a location on which his disturbance was fixated—was obvious."), report and recommendation adopted, No. 18CV1028JLSHKS, 2021 WL 4549168 (W.D.N.Y. Oct. 5, 2021).

Further, as Plaintiff admits, Sitarah had been cleared by medical staff to return to general population, and there is no allegation that non-medical personnel would have had reason to think that decision was obviously improper.[19]

Nor does the Amended Complaint plausibly allege that Sitarah was exhibiting obvious signs of suicidality that should have alerted the non-medical personnel of a substantial risk.  For example, there is no allegation that Sitarah talked of committing suicide.  Rather, Plaintiff merely alleges, upon information and belief, with the source of that belief being the statement of a single prisoner who was interviewed following Sitarah's death, that Sitarah "displayed increased anxiety and, according to one witness [(the prisoner)], a 'dramatic' change in her behavior in the days leading up to her court appearance scheduled for September 4, 2018."  In addition to failing to show that non-medical personnel were aware of such alleged change in behavior, the assertion that Sitarah had a "dramatic change in her behavior" is conclusory and not specific to a risk of suicide.

---

[19] *Compare, Sanchez v. New York Correct Care Sols. Med. Servs., P.C.*, No. 16-CV-6826 CJS, 2018 WL 6510759, at *9 (W.D.N.Y. Dec. 11, 2018) ("[E]ven though Shellard and Galen are not trained medical personnel, under the facts alleged (in which Sanchez repeatedly begged to be taken to the hospital and indicated a desire to kill himself due to the severity of the pain) it may have been reckless for them to respond to the situation by merely telling Sanchez to "settle down" and wait for medical staff to make their rounds, particularly if they had already observed medical staff demonstrating deliberate indifference to his condition over a period of many hours.").

Additionally, the Amended Complaint does not plausibly allege that the Section 1983 defendants intentionally disregarded any substantial risk of suicide by Sitarah.  At most, the pleading plausibly suggests that particular corrections officers were, on the date in question, negligent with regard to the performance of "watch tours" on the fourth floor of the jail, which is insufficient to establish deliberate indifference. *See, e.g., Bowen v. City of Manchester*, 966 F.2d 13, 17 (1st Cir. 1992) ("The 'deliberate indifference' standard means more than simple negligence.  We have held, for example, that a plaintiff may establish deliberate indifference in a prison suicide case by showing (1) an unusually serious risk of harm (self-inflicted harm, in a suicide case), (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk. The risk, the knowledge, and the failure to do the obvious, taken together, must show that the defendant is "deliberately indifferent" to the harm that follows.  . . . Deliberate indifference requires a showing by the plaintiff that the public official had actual knowledge, or was willfully blind, to the serious risk that a detainee would commit suicide.") (citation and internal quotation marks omitted).

Furthermore, even assuming that the Amended Complaint alleged an underlying 14th Amendment violation against Sitarah by *someone*, which it does not, it does not plausibly allege personal involvement in such a violation by Baxter or Harling, nor does it plausibly allege that such a violation occurred due to a custom, policy or practice of Monroe County or PrimeCare to act with deliberate indifference toward the risk of suicide by jail inmates.  Consequently, Defendants' Motion for Judgment on the Pleadings is granted for Baxter, Harling, Monroe County and PrimeCare as to Plaintiff's Section 1983 claim.

<u>Dismissal of the State Law Claims is not Warranted for Failure to Comply</u>
<u>with the General Municipal Law § 50-i</u>

Plaintiff also maintains that Plaintiff's state-law claims in the Amended Complaint should be dismissed since she waited too long before making the averments required by Section 50-I, without a good reason.  However, the law on this point is not as rigid as Defendants make it seem:

> The pleading requirement contained in section 50-i applies in federal court. *See, e.g., McCluskey v. Town of Southampton*, No. 12-CV-2394 (SJF)(ETB), 2013 WL 4049525, at *15 (E.D.N.Y. Aug. 9, 2013). Generally, "[t]he failure to include in the complaint an accurate allegation that at least 30 days have elapsed since the service of the notice and that the adjustment or payment of the claim has been neglected or refused require[s] that the complaint be dismissed." *Perkins v. City of New York*, 26 A.D.3d 483, 810 N.Y.S.2d 218, 220 (2d Dept.2006). However, in certain circumstances, "the pleading deficiency can be cured by an amendment after the requisite time has passed." *Id*.; *see also., Bravo v. City of N.Y.*, 122 A.D.2d 761, 505 N.Y.S.2d 647 (2d Dept.1986) (pleading deficiency excused where defendant its Answer specifically conceded requisite facts). Amendments are routinely granted, particularly where the notice of claim was timely filed, and the municipality suffered no prejudice. *See, e.g., Fitzgibbon v. Cnty. of Nassau*, 491 N.Y.S.2d 266, (2d Dept.1985) (although motion to amend to include 50–i notice initiated more than one year and 90 days after the cause of action accrued, abuse of discretion to deny amendment in the absence of any demonstrable prejudice to defendants).

*Nickey v. City of New York*, No. 11-CV-3207 RRM RLM, 2013 WL 5447510, at *11 (E.D.N.Y. Sept. 27, 2013), *on reconsideration in part sub nom. Nickey v. Coward*, No. 11CIV3207AMDRLM, 2016 WL 324959 (E.D.N.Y. Jan. 26, 2016), *aff'd sub nom. Nickey v. Carboine*, 682 F. App'x 78 (2d Cir. 2017).

Here, the notice of claim was timely filed, after Plaintiff was granted leave to file a late notice of claim, and Defendant claims no prejudice from Plaintiff's delay in amending the Complaint.  The Court therefore denies this aspect of Defendants' application.

Consequently, the state-law tort claims directed at Baxter, Harling, Monroe County and John Doe Deputies 1-6, against which Defendants did not otherwise move, may go forward.  In particular, the Court is referring to all claims in the Amended Complaint's Second Cause of Action other than constitutional claims, which appear to be standard negligence claims.

<u>The Amended Complaint Does Not Plausibly Allege Medical Malpractice Under New York Law, Except as to PrimeCare</u>

Defendants next assert that the Amended Complaint fails to allege a medical malpractice claim against Capellupo or Primecare, for two reasons: First, it fails to "allege the standard of care or any deprivation thereof";[20] and, second, it fails to plausibly allege malpractice by any particular defendant.[21]  Plaintiff's response acknowledges that she is attempting to assert a medical malpractice claim, and purports to identify various "deviations from the standard of care."[22]  Plaintiff also references an expert's affidavit purporting to explain the alleged "deviations from the standard of care."[23]  Although, the expert's affidavit (ECF No. 21-5) is not attached to or incorporated by reference into the proposed Amended Complaint (ECF No. 21-2).  Plaintiff maintains, though, that while she will be required to prove a deviation from the standard of care at trial, she is not required to "plead the standard of care" in her complaint.[24]

With regard to the first aspect of Defendants' argument, regarding the necessity of pleading a violation of a standard of care, the law is clear concerning the elements of a New York medical malpractice claim:

Under New York law, a negligence claim generally requires: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Fed. Ins. Co. v. Distinguished Properties Umbrella*

---

[20] ECF No. 12-2 at p. 15.
[21] *See*, ECF No. 27 at p. 7 ("Plaintiff's opposition does not address the lack of specific factual allegations against Nurse Capellupo or any other individual healthcare provider."). In considering the second aspect of this argument, the Court's consideration includes whether the cause of actions states a claim against the John Doe Healthcare Providers, even though Defendants' motion is purportedly made just on behalf of PrimeCare and Capellupo.
[22] *See, e.g.*, Pl. Mem. of Law, ECF No. 20-5 at pp. 7–9.
[23] *Id*. at p. 9.
[24] ECF No. 20-5 at p. 12 ("A plaintiff need not plead the standard of care in a complaint.").

*Managers Inc.*, 721 F. Supp. 2d 293, 299 (S.D.N.Y. 2010) (internal quotation marks and citation omitted). <u>In the specific context of medical malpractice, a plaintiff must demonstrate: "(1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of injury or damage."</u> *Torres v. City of New York*, 154 F. Supp. 2d 814, 819 (S.D.N.Y. 2001).

*Rivera v. Fed. Bureau of Prisons*, No. 17CV05103 (GBD) (DF), 2018 WL 11312146, at *10 (S.D.N.Y. Dec. 14, 2018) (emphasis added), report and recommendation adopted, 368 F. Supp. 3d 741 (S.D.N.Y. 2019).[25]

Medical malpractice is thus a particular type of negligence, and "[a]lthough no rigid analytical line separates the two, [New York courts] have long recognized the distinction between an ordinary negligence cause of action against a hospital and/or a physician and a medical malpractice cause of action against a hospital and/or a physician[.]" *Ingutti v. Rochester Gen. Hosp.*, 145 A.D.3d 1423, 1424, 44 N.Y.S.3d 274, 275 (2016) (citations omitted).  A primary difference between the two is that the latter type of claim requires a greater showing, namely, a deviation from an accepted medical standard of care. *See, id*. at 1424-1425 ("Here, the medical malpractice cause of action alleges, *inter alia*, that defendant did not properly assess plaintiff's medical and mental status and rendered medical care that was not in accordance with good and accepted medical practice, and that the discharge of plaintiff was not in accordance with good and accepted medical practices.  . . .  [T]hose allegations together with the complaint state a cause of action for medical malpractice with a duty and standard of care distinct from that alleged in plaintiffs' now-dismissed ordinary negligence cause of action.") (citations omitted); *see also,*

---

[25] *See also, D'Alessandro v. United States*, No. 13-CV-416RJA(SR), 2022 WL 2829748, at *12 (W.D.N.Y. Apr. 26, 2022) ("This Court recognizes the caselaw cited by plaintiff which states that 'the distinction between medical malpractice and negligence is a subtle one, for medical malpractice is but a species of negligence and no rigid analytical line separates the two. . . . [A] claim sounds in medical malpractice when the challenged conduct constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician. By contrast, when the gravamen of the complaint is not negligence in furnishing medical treatment to a patient, but the hospital's failure in fulfilling a different duty, the claim sounds in negligence.' *Weiner v. Lenox Hill Hosp.*, 88 N.Y.2d 784, 787–88 (N.Y. 1996) (internal quotation marks and citations omitted).").

*Pearce v. Feinstein*, 754 F. Supp. 308, 310 (W.D.N.Y. 1990) ("The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience of the trier of the facts.  To establish a prima facie case of malpractice, expert testimony is normally necessary to allow the jury to determine the proper standard of care.") (citations and internal quotation marks omitted).

Additionally, courts have held that a plaintiff must allege a deviation from an accepted medical standard of care in order to state a claim for medical malpractice. *See, e.g., Rivera v. Fed. Bureau of Prisons*, No. 17CV05103 (GBD) (DF), 2018 WL 11312146, at *11 (S.D.N.Y. Dec. 14, 2018) ("Plaintiff has plausibly alleged – as would be necessary to state a medical-malpractice claim – that his placement by BOP medical personnel on a detoxification program that, in sharp increments, reduced his doses of methadone from what he had previously been receiving deviated from accepted medical practice."), report and recommendation adopted, 368 F. Supp. 3d 741 (S.D.N.Y. 2019); *see also, Brown v. Cnty. of Jefferson*, No. 920CV1192GLSATB, 2021 WL 2941919, at *3 (N.D.N.Y. June 11, 2021) ("Accordingly, in order to state a claim for medical malpractice, a plaintiff must specify the injuries he suffered and allege sufficient facts to demonstrate how his injuries were caused by a deviation from the standard of care."), report and recommendation adopted sub nom. *Brown v. Keefer*, No. 920CV1192GLSATB, 2021 WL 2935901 (N.D.N.Y. July 13, 2021) (citations omitted, collecting cases); *Jones v. Beth Israel Hosp.*, No. 1:17-CV-3445-GHW, 2018 WL 1779344, at *9 (S.D.N.Y. Apr. 12, 2018) ("To survive a motion to dismiss, a plaintiff must allege the defendant's deviation from 'accepted medical practice' and a causal nexus between the deviation and the harm suffered by the plaintiff.").

Defendants here are correct that the Amended Complaint's Second Cause of Action does not allege that any defendant sued thereunder deviated from accepted medical practice or a particular standard of professional medical care.  Rather, the proposed pleading merely lists a number of particular acts, related to Sitarah's mental health treatment at the jail, or lack thereof, that were allegedly negligent and/or wrongful.  However, even assuming *arguendo* that this would otherwise require the dismissal of the Second Cause of Action,[26] the Court does not find that dismissal is warranted here, since it construes the Amended Complaint as including the expert medical affidavit (ECF No. 21-5) filed simultaneously along with the proposed Amended Complaint, even though Plaintiff did not literally attach the affidavit to the Amended Complaint as an  exhibit or expressly incorporate it by reference.[27]  This affidavit asserts how and why the various aforementioned negligent acts, concerning Sitarah's mental health treatment at the Jail or lack thereof, deviated from the standard of medical care required under the circumstances.  Accordingly, the Court denies Defendants' motion insofar as it is based on the alleged failure to plead a standard of care in the Second Cause of Action.

The Court, though, agrees, at least in part, with the second aspect of Defendant's argument concerning the medical malpractice claim, namely, that the pleading fails to plausibly allege medical malpractice by Capellupo or the John Doe Healthcare Providers.  That is, the

---

[26] The cause of action could theoretically still state an ordinary negligence claim, even if it did not state a malpractice claim. *See, e.g., Jones v. Beth Israel Hosp.*, No. 1:17-CV-3445-GHW, 2018 WL 1779344, at *9 (S.D.N.Y. Apr. 12, 2018) ("Under New York law, there is no prohibition against simultaneously pleading both an ordinary negligence cause of action and one sounding in medical malpractice.  It is simply beyond cavil that an action for personal injuries may be maintained, in the proper case, on the dual theories of medical malpractice or simple negligence where a person is under the care and control of a medical practitioner or a medical facility.  Moreover, in a proper case, both theories may be presented to the jury.") (citations omitted). *Jones v. Beth Israel Hosp.*, No. 1:17-CV-3445-GHW, 2018 WL 1779344, at *9 (S.D.N.Y. Apr. 12, 2018)

[27] A plaintiff cannot defeat a 12(b)(6) or 12(c) motion by submitting supplemental material outside the Complaint for the Court to consider, in the hope of salvaging an otherwise implausible claim.  Rather, the plaintiff should amend the actual pleading to incorporate the additional information. *See, e.g., In re Myovant Scis. Ltd. Section 16(b) Litig.*, 513 F. Supp. 3d 365, 373–74 (S.D.N.Y. 2021) ("In their papers, the plaintiffs rely on materials beyond the scope of the [Complaint] and if they wish the Court consider these, they should amend their complaint.").  As indicated, though, here the Court construes the expert affidavit, filed at the same time as the Amended Complaint, as being part of the pleading.

Amended Complaint does not allege facts plausibly indicating that such defendants personally committed a deviation from the standard of care, but, rather, alleges only that they were employed as medical staff at the Jail during the period when the deviations allegedly occurred, and that they had a "provider-patient" relationship with Sitarah.   That is insufficient to state a claim, and the Court accordingly dismisses the Second Cause of Action as against Capellupo and the John Doe Healthcare Providers.

Defendants make the same argument concerning PrimeCare, namely, that the Amended Complaint's Second Cause of Action does not specifically attribute acts of malpractice to PrimeCare.[28]   However, while the parties did not touch on this issue, the Court finds that the Second Cause of Action may proceed as a respondeat superior claim against PrimeCare, since Plaintiff has plausibly alleged that there were deviations from the standard of care with regard to Sitarah's mental health treatment at the Jail, and any such deviation would have necessarily been committed by one or more of PrimeCare's employees acting within the scope of their employment.[29] *See, e.g., Shapiro v. Good Samaritan Reg'l Hosp. Med. Ctr.*, 55 A.D.3d 821, 823, 865 N.Y.S.2d 680, 681 (2d Dept. 2008) ("[T]he plaintiff's failure to commence a timely direct action against the pathologists within 2 ½ years after they interpreted the tissue specimens from his September and October 1998 surgeries does not compel dismissal of the plaintiff's vicarious liability claim against the hospital. The plaintiff's action against the hospital was timely commenced within the applicable 2 ½-year limitations period, and the pathologists are not necessary parties to an action seeking to hold the hospital vicariously liable for their alleged negligence on respondeat superior principles.").   Moreover, Plaintiff may maintain the Second

---

[28] *See*, ECF No. 12-2 at p. 15 ("[T]he factual allegations upon which Plaintiff's medical malpractice claim appear to be based . . . are not specifically attributed to either Nurse Capellupo or PrimeCare.").

[29] Again, the Amended Complaint alleges that PrimeCare, pursuant to a contract with Monroe County, "provided medical and/or mental health services to [Jail] inmates, including plaintiff's decedent," and the Court construes this as meaning that PrimeCare was responsible for providing all such services to Sitarah. Am. Compl. at ¶ 19.

Cause of Action solely as against PrimeCare. *See, e.g., Ferreira v. City of Binghamton*, 975 F.3d 255, 278 (2d Cir.) ("The City asserts that a *respondeat superior* claim cannot survive unless based on a demonstrated entitlement to recover against its employee. This is certainly correct. Nonetheless, the plaintiff is not obligated to sue the employee in order to obtain respondeat superior liability of the employer."), certified question accepted, 35 N.Y.3d 1105, 157 N.E.3d 673 (2020), and certified question answered, 38 N.Y.3d 298, 194 N.E.3d 239 (2022).  Plaintiff may identify the PrimeCare employees directly involved in the complained-of decisions  concerning Sitarah's care (*e.g.*, the decision to remove her from suicide watch) through discovery, and, if she can demonstrate that any of them committed malpractice, she can hold PrimeCare vicariously liable.   Accordingly, the Court denies Defendants' motion to dismiss the Second Cause of Action as against PrimeCare.

CONCLUSION

Defendants' Motion for Judgment on the Pleadings (ECF No. 12) directed at the original Complaint is denied as moot, and Plaintiff's Motion to Amend (ECF No. 21) is granted in part, and denied in part as futile, as follows: The Section 1983 claim is dismissed as to all defendants, and the medical malpractice claim is dismissed as to Capellupo and John Doe Healthcare Providers 1–5; otherwise, the motion to amend is granted.   Additionally, the Clerk of the Court is directed to terminate the Monroe County Sheriff's Office as a party to this action.

SO ORDERED.

Dated: Rochester, New York
        November  22, 2022

ENTER:

CHARLES J. SIRAGUSA
United States District Judge